BESSIE KNAPP, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 44348, 44351–44354, 44407–44411. Filed January 26, 1955.

---

[1] Proceedings of the following petitioners are consolidated herein : Frederick M. Knapp, Docket No. 44351 ; Gilson Knapp, Docket No. 44352 ; F. E. Knapp, Docket No. 44353 ; George Parker Knapp, Docket No. 44354 ; Mavis Knapp, Docket No. 44407 ;, Edith Knapp, Docket No. 44408 ; Ida Knapp, Docket No. 44409 ; Olga Knapp, Docket No. 44410, John A. Knapp, Docket No. 44411.

*Howard J. Stafford, Jr., Esq.,* for the petitioner.
*F. S. Gettle, Esq.,* for the respondent.

OPINION.

FISHER, *Judge:* All of the facts are stipulated and are incorporated herein by reference.

Petitioners Frederick M. Knapp, Gilson Knapp, F. E. Knapp, George Parker Knapp, and John A. Knapp are members of the partnership styled F. E. and J. A. Knapp, each being the owner of a 20 per cent interest in the partnership. The petitioners Edith Knapp, Ida Knapp, Bessie Knapp, Mavis Knapp, and Olga Knapp are the wives of the respective partners and are involved herein by reason of their community interest in the partnership income under the law of the State of Texas.

Prior to 1949, the partnership had acquired 10 tracts of land in the Rio Grande Valley of Texas. The date of acquisition, the original cost, the number of acres of land, the number of acres planted previously in citrus trees, and the cost allocable to land on each of the tracts at the time of acquisition of each tract are as follows:

*SCHEDULE A*

| Tract No. | Date of acquisition | No. of acres of land | No. of acres planted in citrus trees | Original cost | Cost allocable to land |
|---|---|---|---|---|---|
| 1 | February 11, 1942 | 279 | 140 | $21,500 | $8,581.55 |
| 2 | January 7, 1938 | 55 | 3 | 21,400 | 18,390.62 |
| 3 | December 22, 1937 | 40 | 0 | 3,000 | 3,000.00 |
| 4 | June 30, 1942 | 25 | 18 | 2,500 | 791.14 |
| 5 | September 4, 1942 | 37 | 25 | 8,000 | 2,642.86 |
| 6 | September 21, 1928 | 97 | 0 | 12,500 | 12,500.00 |
| 7 | September 22, 1941 | 46 | 0 | 11,000 | 11,000.00 |
| 8 | April 2, 1943 | 30 | 0 | 3,000 | 3,000.00 |
| 9 | June 20, 1946 | 34 | 0 | 12,000 | 12,000.00 |
| 10 | May 23, 1945 | 220 | 0 | 42,000 | 42,000.00 |
| Totals | | 863 | 186 | $136,900 | $113,906.17 |

At the time of acquisition of these tracts, there was no allocation of cost as between citrus trees and land by the petitioner. The 677 acres which were not planted in citrus trees at the time of acquisition of the tracts were subsequently so planted. The cost of planting and bringing to a productive state the trees planted after acquisition of the tracts was claimed and allowed for tax purposes as an ordinary and necessary business expense of the partnership. On January 29, 1949,

all of the land acreage in all 10 tracts was fully planted in citrus trees.

On January 29, 1949, a severe freeze lasting for a period of 2 days commenced in the Rio Grande Valley of Texas in which the partnership tracts were all situated. The freeze killed or damaged some of the trees on each of the 10 tracts.

The fair market value of each of the tracts immediately prior to the freeze was in excess of the original cost of each tract. The fair market value of each entire tract including trees immediately preceding the freeze, the fair market value immediately after the freeze, the decrease in fair market value as a result of the freeze, and the percentage of such decrease are as follows:

*SCHEDULE B*

| Tract No. | Fair market value before freeze—land and trees | Fair market value after freeze—land and trees | Decrease in fair market value—land and trees | Percentage of decrease in fair market value—land and trees |
|---|---|---|---|---|
| | | | | Per cent |
| 1 | $211,300 | $134,500 | $76,800 | 36.35 |
| 2 | 70,400 | 51,850 | 18,550 | 26.35 |
| 3 | 44,000 | 40,000 | 4,000 | 9.09 |
| 4 | 26,600 | 22,000 | 4,600 | 17.29 |
| 5 | 43,250 | 33,400 | 9,850 | 22.77 |
| 6 | 95,900 | 54,150 | 41,750 | 43.53 |
| 7 | 60,950 | 46,000 | 14,950 | 24.53 |
| 8 | 25,000 | 16,000 | 9,000 | 36.00 |
| 9 | 25,500 | 18,900 | 6,800 | 26.66 |
| 10 | 110,000 | 92,000 | 18,000 | 16.36 |
| Totals | $712,900 | $508,800 | $204,300 | |

Petitioners contend that there was a casualty loss to both land and trees; that both land and trees should be considered as a unit in arriving at the allowable loss; and that the percentages of decrease in fair market value of each entire tract (including both land and trees) as a result of the freeze should be applied to the "original cost" of each tract listed in Schedule A above in order to determine the economic freeze loss to each entire tract as follows:

| Tract No. | Loss | Tract No. | Loss |
|---|---|---|---|
| 1 | $7,815.25 | 7 | $2,698.30 |
| 2 | 5,638.90 | 8 | 1,080.00 |
| 3 | 272.70 | 9 | 3,199.20 |
| 4 | 432.25 | 10 | 6,871.20 |
| 5 | 1,821.60 | | |
| 6 | 5,441.25 | Total | $35,270.65 |

Respondent agrees that trees were damaged as a result of the freeze. He contends, however, that there was no damage to the land as such. He takes the further position that if we hold that there was damage to the land as a result of the freeze, the allowable loss must be determined separately, and not on a unit basis with the trees. Since the costs of planting trees after acquisition of the land were deducted by the

partnership as business expenses and not capitalized, respondent further contends that only the citrus trees which were already planted at the time of acquisition (portions of 4 tracts) have a "basis" for tax purposes. Respondent has accordingly determined an allowable deduction for loss in the amount of $5,576.41, attributable to damage to trees already planted at the time the land was acquired as set forth in the following Schedules C and D:

SCHEDULE C

| Tract No. | Number of acres planted at acquisition | Fair market value before freeze—trees | Fair market value after freeze—trees | Decrease in fair market value—trees | Percentage of decrease in fair market value—trees |
|---|---|---|---|---|---|
| | | | | | Per cent |
| 1 | 140 | $77,000 | $49,000 | $28,000 | 36.36 |
| 2 | 3 | 2,250 | 1,500 | 750 | 33.33 |
| 4 | 18 | 17,100 | 13,500 | 3,600 | 21.05 |
| 5 | 25 | 25,000 | 18,750 | 6,250 | 25 |
| Totals | 186 | $121,350 | $82,750 | $38,600 | |

SCHEDULE D

| Tract No. | Cost of tract allocable to trees | Allowable depreciation on trees | Adjusted basis of trees | Percentage of decrease—trees | Loss |
|---|---|---|---|---|---|
| | | | | Per cent | |
| 1 | $12,918.45 | $2,712.85 | $10,205.60 | 36.36 | $3,711.13 |
| 2 | 3,009.38 | 1,083.38 | 1,926.00 | 33.33 | 642.00 |
| 4 | 1,708.86 | 478.45 | 1,230.41 | 21.05 | 259.01 |
| 5 | 5,357.14 | 1,500.03 | 3,857.11 | 25 | 964.27 |
| Total | | | | | $5,576.41 |

Section 23 (e) of the Internal Revenue Code of 1939 is applicable to the instant case. That section provides that in computing net income there shall be allowed as deductions losses sustained during the taxable year and not compensated for by insurance or otherwise (1) if incurred in trade or business; (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or (3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft.

It has been held in cases involving nonbusiness property, such as residential property (where no depreciation is allowed or allowable on either land or improvements), that casualty damage to buildings and to ornamental and fruit trees is measured by considering the decrease in fair market value of the entire property (including land and improvements) as a unit. See *Whipple* v. *United States*, (D. Mass., 1928) 25 F. 2d 520; *Buttram* v. *Jones*, (W. D., Okla., 1943) 87 F. Supp. 322, and cases cited therein. It appears that in the cases cited in this paragraph there was no practical reason, for tax purposes,

to consider the land and buildings or trees separately in determining the amount of the casualty loss.

In the instant case, we are dealing with business property. It is our view that buildings and orchards used in trade or business are not to be considered as integral parts of the realty for the purpose of measuring loss from casualty for tax purposes. Section 23 (i) of the Internal Revenue Code of 1939 provides that the basis for determining the amount of deduction under section 23 (e) for losses shall be the adjusted basis provided in section 113 (b) for determining the loss from a sale. Section 113 (b) (1) (B) provides that the adjusted basis shall be the cost of the property adjusted to the extent of the depreciation allowed "but not less than the amount allowable * * *." Respondent has determined that the trees in this case are depreciable assets, and petitioners have offered no evidence to the contrary. We therefore accept respondent's determination in this respect. Thus, the basis of the trees is to be adjusted by deducting the appropriate amount of depreciation, but the land, on the other hand, is not subject to depreciation and no like adjustment is required. As a result, if we treat the land and trees as a unit, we would, in effect, adjust the basis of the *entire* property by the amount of depreciation allowed or allowable as to only a *part* of the property. *United States* v. *Koshland*, (C. A. 9, 1953) 208 F. 2d 636.

In the instant case, there is an additional reason for treating the land and trees separately. The cost of planting trees planted by the partnership subsequent to the purchase of the land was not capitalized by the partnership, but was claimed and allowed as an ordinary and necessary business expense. We agree with respondent's contention that under the circumstances the trees planted after acquisition of the land have no basis for tax purposes. Therefore, if we were to treat land and trees as a unit (as contended by petitioner), we would, in effect, be applying a conglomerate ratio, determined on the basis of proportionate economic loss on three unrelated factors, to the basis of one factor and the adjusted basis of another, the two latter factors likewise unrelated. The three unrelated factors furnishing the proposed basis for determining the ratio are land (nondepreciable), trees planted before acquisition of the land (depreciable), and trees planted after acquisition of the land (having no basis for tax purposes on the facts of this case). The ratio, on the theory advanced by petitioner, would then be applied to the cost of the land and the adjusted basis of the trees planted before acquisition of the land. The result would necessarily be a distorted determination of a loss in an amount which we cannot, under the circumstances, accept as allowable.

We therefore turn first to the separate determination of what loss, if any, petitioners sustained with respect to the land. The parties stipulated in this respect as follows:

That the fair market value of the tracts in question immediately after the freeze was less per acre than for comparable bare land in the immediate vicinity which contain [sic] no citrus trees, i. e., the fair market value of land with dead citrus trees or trees damaged by the freeze was less per acre than the fair market value of bare farm land; such variance in values was attributable to the cost of removing dead citrus trees, which cost was seventy-five dollars per acre immediately after the freeze.

Thus, the stipulation establishes that the decrease in value of the land due to the presence of dead or damaged trees was a direct result of the freeze. We hold that such a decrease in value is a casualty loss sustained by petitioners within the purview of section 23 (e), Internal Revenue Code of 1939. See *Ferguson* v. *Commissioner*, (C. A. 10, 1932) 59 F. 2d 893, remanding 23 B. T. A. 364.

Respondent, in opposing this view, objects to the materiality of the stipulated facts quoted above. He argues that the land suffered *no* damage in the instant case and urges that its fertility, irrigation, and area were unaffected by the freeze. He argues further that land suffers no loss when trees are killed or damaged by natural causes such as a freeze, blight, disease, or insects.

It is clear, of course, that the trees were damaged, but we find that there was actual damage and loss in addition to such tree damage. Anyone contemplating the purchase of bare land would naturally take into consideration such factors as whether the land was cleared or was studded with boulders, tree stumps, or the like. Here, as a direct result of the freeze, the condition (and value) of the land was affected by the presence of the dead trees. The damage to the trees themselves was separate and distinct from the resultant damage to the land, and the loss attributable to the latter factor was in addition to, and not a part of, the damage attributable to the former. Under these circumstances, supported by a stipulation which expressly establishes that the freeze did kill or damage trees and that the presence of dead and damaged trees directly caused a decrease in the market value of the land, we hold that a casualty loss to the land did occur, supporting a deduction to the extent set forth *infra*.

The decrease in value of the land due to the freeze represents a partial loss sustained on business property. In such instances, the determination of the allowable loss for tax purposes is the same percentage of the adjusted basis of the land (e. g., the cost of the land in the instant case) as the actual loss (e. g., the decrease in market value of the land as a result of the freeze) bears to the market value of the land immediately before the casualty. *United States* v. *Koshland, supra*, footnote 3, p. 639. The adjusted basis of the land for tax purposes is thereafter reduced by the amount of the allowable deduction for loss. *Fred Frazer*, 10 B. T. A. 409 (1928); *United States* v. *Koshland, supra*, 639.

With respect to the application of the above formula to the facts of the instant case, if the percentages listed in Schedule B above were accurate percentages of decrease in market value of the land alone in each tract, we could easily determine the allowable loss attributable to the land since the adjusted basis of the land in each tract (cost or allocable cost) was stipulated by the parties (Schedule A). Those percentages, however, are percentages of decrease in market value of each entire tract, including both land and trees. There is no evidence that the land in each tract decreased in value by the same percentage as the trees thereon. Accordingly, we have no basis in fact for a finding that the percentages are applicable to the land alone in each corresponding tract, for such percentages are only indicative of the combined decrease in market value of two dissimilar assets and not necessarily that of either one of them.

In view of the state of the record in the instant case, therefore, we are unable to make a precise finding of either the actual or allowable loss attributable to the land alone. Nevertheless, the facts as stipulated include sufficient information for us to determine a minimum amount of allowable loss attributable to the land as follows:

1. The portion of the stipulated facts quoted above shows the value of the land was decreased as a result of the freeze in the amount of $75 per acre. Since there are a total of 863 acres in the 10 tracts, the total decrease in land value was $64,725.

2. The total fair market value before the freeze of both land and trees was $712,900 (Schedule B above). There is no direct evidence in the record of the separate fair market values, before the freeze, of the land or all trees alone. Respondent, however, determined that the fair market value before the freeze of trees alone on portions of 4 tracts was $121,350 (Schedule C above). Since we have no basis for attributing value to the remaining trees, we cannot further reduce the over-all fair market value of both land and trees for the purpose of determining the value of the land alone, but we can go so far as to find that the total fair market value of the land alone in all 10 tracts immediately before the freeze was no more than the above total value of both land and trees ($712,900) less the tree values determined by respondent ($121,350), or a net of $591,550.

The burden of proof is, of course, upon petitioners. No doubt the burden has been a difficult one under the circumstances of this case. Since there is a failure, to a substantial extent, to sustain that burden, our necessary acceptance of an obviously excessive land valuation for the period immediately before the freeze will bear heavily against petitioners in our determination, *infra*, of the percentage of actual loss to the land and the resulting allowable loss attributable thereto. Upon the record, however, we have no other basis of approach to the determination of this factor.

3. The percentage of decrease in fair market value of the land in all 10 tracts is determinable by dividing the total maximum fair market value of the land before the freeze, $591,550 (2 above) into the total decrease in land value, $64,725 (1 above). The resulting percentage is 10.94 per cent. Since, as indicated in 2, above, we have necessarily used an excessive assumed valuation for the land, the percentage of decrease represents less than the figure to which petitioners would be entitled if the correct fair value of the land immediately prior to the freeze had been established.

4. The total cost of acquisition allocated by stipulation to the land in the 10 tracts is $113,906.17 (Schedule A above). As previously stated, this amount is the adjusted basis of the land at the time of the freeze. By applying the percentage of 10.94 per cent to the adjusted basis, we find that the total allowable loss attributable to the land is $12,461.33.

The question of allocation of the total allowable loss to the several tracts is not before us at this time, and we see no occasion to consider it unless and until it arises as a contested issue. It is sufficient for the purposes of this case to say that it is apparent that the loss allocable to the land as to any of the 10 tracts could not possibly equal, much less exceed, the cost allocated to the land in accordance with the stipulation of the parties.

We turn now to the consideration of the loss sustained by petitioners with respect to the trees. There is no dispute between the parties concerning whether a deductible loss was sustained with respect to the trees as a result of the freeze. We must, however, determine the proper method of measuring that loss. Petitioners contend that the damage to trees on all 10 tracts must be considered in measuring the loss. Respondent contends that only the trees which were planted at the time of acquisition of the tracts should be considered. We agree with respondent.

As pointed out above, the basis for determining the amount of the deduction for loss sustained to business property is the adjusted basis for determining the loss from a sale. The trees planted by the partnership subsequent to the purchases of the tracts have no "basis" whatsoever. The cost of planting such trees and bringing them to a productive state was not capitalized by the partnership, but was claimed and allowed for tax purposes as an ordinary and necessary business expense. Since these trees had no basis to the partnership for tax purposes, there was no allowable loss sustained with respect to them.

Portions of 4 of the tracts, however, did have trees planted on them at the time of acquisition, and the parties have stipulated the amount of the purchase price of each tract which is allocable to the acquired trees. These trees, therefore, do have a "basis" to the partnership.

The destruction of some of the acquired trees in the instant case is a partial destruction of business property. Accordingly, the allowable loss for tax purposes is determined by the same formula as stated above with respect to the land; that is, the same percentage of the adjusted basis of the property as the actual loss bears to the market value of the property immediately before the freeze.

In determining the adjusted basis of the acquired trees at the time of the freeze, respondent determined that the trees in question were depreciable assets. He deducted the amount which he determined to be the allowable depreciation from the date of acquisition of the trees to December 31, 1948, the end of the taxable year preceding the freeze. Respondent also determined the percentage of decrease in value of the trees on those portions of 4 tracts (Schedule C above) and applied those percentages to the adjusted bases in order to obtain the allowable loss attributable to the trees on each tract and the total of such allowable losses (Schedule D above). In each of the above respects, his determination is presumed to be correct. We find no basis in the record for disturbing respondent's determination on this issue and, accordingly, we find that the total allowable loss attributable to trees is $5,576.41. Petitioners contend that the percentages of decrease applied by respondent are much too low. They have failed, however, to offer any evidence on the basis of which we could apply higher percentages. The burden was, of course, upon them to establish the amount of the deductible loss, if any, in excess of that allowed by respondent.

For the sake of completeness, we discuss a further question relating to a paragraph of the stipulation of facts reading as follows:

During the year 1951, and being after the freeze, 516 acres of citrus trees were grubbed out and removed from the tracts in question, the cost of which was deducted as an expense on the 1951 partnership return of F. E. and J. A. Knapp. This 516 acres represented 59.79% of all citrus trees located on the tracts in question.

Petitioners object to a consideration of these facts on the ground that they are not material. We agree with petitioners, and have disregarded the facts in question in our determinations. We have before us for consideration deficiencies determined for only the year 1949. Respondent states in his brief that the stipulated facts "need be considered by this Court only insofar as such facts will prevent petitioners from obtaining at one time or another the benefits of a double deduction for income tax purposes." It is apparent, however, that respondent has had notice of petitioners' tax treatment of the 1951 removal cost since some time prior to the hearing in this case on November 10, 1953, when the stipulation was submitted to this Court. It is also apparent that respondent is not yet barred by any statutory limitation from acting to prevent either an erroneous deduction or

a double deduction in petitioners' 1951 returns. The issue of whether some or all of the removal cost is to be expensed or capitalized in 1951 is not now before us and we see no occasion to give it consideration in this case.

The remaining issue relating to customers' deposits on the books of Knapp Motor Company remaining unclaimed for over 6 years has been conceded by respondent.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

MURDOCK, *J.*, dissenting: A loss deductible under section 23 (e) could result from a casualty to land, but this is not such a case. This land was not destroyed or damaged by the freeze but was just as good land thereafter as it was before. The damage was to the trees.

A deduction might possibly be allowed on some other theory. For example, the cost of planting trees was allowed as an expense of this business, and perhaps the cost of removing them might also be an ordinary and necessary expense of the business, or, since the expense of removing the trees was so proximately related to the casualty (freezing of the trees) it might be deducted as a casualty loss over and above the loss of the trees, even though the freeze did no damage to the land itself.

ARUNDELL, VAN FOSSAN, and HARRON, *JJ.*, agree with this dissent.

TURNER, *J.*, dissenting: I agree with Judge Murdock that the facts do not show that the land was destroyed or damaged. The question as to when or on what basis the cost of removing the dead or damaged trees becomes deductible is, as he indicates, a point not here decided.