William S. Blomeley, Jr., and Evelyn Blomeley v. Commissioner.
Blomeley v. Commissioner
Docket No. 94819.
United States Tax Court
T.C. Memo 1964-84; 1964 Tax Ct. Memo LEXIS 249; 23 T.C.M. (CCH) 514; T.C.M. (RIA) 64084; March 31, 1964
*249 1. Deductible farm expenses determined. 2. Amount of casualty loss from frost damage to lime trees determined. 3. Petitioner failed to prove that he incurred deductible travel expenses while away from home in his employment as a commercial airline pilot in excess of the amounts reimbursed by his employer. 4. Addition to tax for negligence applied. A. F. Barone, 299 Alhambra Circle, Coral Gables, Fla., for the petitioners. Eugene B. Smith, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax under section 6653(a), I.R.C. 1954, [1] as follows: Addition to tax,
Year
Deficiency
sec. 6653(a)
1958
$2,161.79
$108.09
1959
998.37
49.92
*250 The issues for decisions are: (1) Whether petitioners may deduct the amounts of $7,578.17 [2] and $2,063.23, for the years 1958 and 1959, respectively, as expenses incurred in the business of farming; (2) Whether petitioners may deduct the amount of $2,000, for the year 1958, as a casualty loss occasioned by frost damage to a lime grove; (3) Whether petitioners may deduct the amounts of $511.71 and $1,052.58, for the years 1958 and 1959, respectively, as travel expenses incurred in those years by William S. Blomeley, Jr. (who is hereafter referred to as petitioner), in excess of reimbursements received by him from his employer; and (4) Whether any part of the deficiency for the year 1958 or 1959 is due to negligence or to intentional disregard of rules and regulations. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife and, during the years 1958 and 1959, resided in Homestead, *251 Fla. They filed joint Federal income tax returns for those taxable years with the district director of internal revenue, Jacksonville, Fla. During the period here involved, petitioner was a commercial airline pilot employed by National Airlines, Inc. (hereafter referred to as National), in Miami, Fla. Petitioner also operated a farm in the south, or Redlands area, of Dade County, Fla. During 1958 he had 10-11 acres planted in cantaloupe, 15 acres in squash, 5 acres in encumbers, about 250 Barbados cherry trees, and 24 mango trees. In addition to these crops and trees he operated two groves of line trees covering a total of about 26 acres, 5 acres of which was land owned by him. On February 5, 1958, there were low temperatures and a destructive freeze in Dade County. Low temperatures persisted for the following 3 weeks, and during the week of February 15-21, average temperatures were 15-20 degrees below seasonal averages. The prolonged cold spell was damaging to crops as was the freeze of February 5. Petitioner's crops and trees were damaged or destroyed by the freeze of February 5 and the subsequent cold spell. At the date of the destructive freeze, petitioner had over 500 *252 young lime trees on the 5-acre lime grove owned by him, which he had bought as rooted trees and replanted in 1957. A large number of these trees were killed by the freeze and cold weather of February 1958. Petitioner paid between $1.50 and $2 per tree for these trees in 1957. Petitioner also incurred expenses for planting, weeding, fertilizing, and irrigating these trees prior to the freeze in February 1958. Petitioner discontinued operation of the groves in 1959; but his entire farm income for 1959, in the amount of $107.61, was reported to be from the sale of limes. On his return for 1958, petitioner claimed a deduction for a casualty loss in the amount of $2,000, which he explained as "Frost damage to citrus trees, destroyed - 200 trees [at] $10.00 a tree." Respondent disallowed this deduction. After the cold weather of February 1958, petitioner replanted about 11 acres of squash, and also planted 4 acres of beans. He discontinued his cucumber crop and turned it over to a neighbor. From time to time during the growing season in 1958 and at harvest time, petitioner hired outside labor to help him on the farm, most of whom were negroes whom he paid $6- $7 per day. He also *253 employed some white labor at $1.25 per hour. On his return for 1958, petitioner reported gross income from farming in the amount of $907.96. He reported the following expenses with regard to the farming operation: Labor hired
$ 1,788.55
Seed and plants purchased
262.95
Machine hire
1,572.20
Supplies purchased
151.01
Cost of repairs and maintenance
497.68
Fertilizers and lime
1,963.32
Gasoline and other fuel
963.45
Taxes
728.68
Insurance
25.00
Interest on farm notes and mortgages
1,596.84
Water, rent, electricity, and telephone
164.13
Insecticide
87.26
Other
102.62
Depreciation
1,614.57
Total
$11,518.26
Of the foregoing expenses respondent disallowed all except taxes, interest, and depreciation in the amounts claimed, for, it is stipulated, "lack of verification by petitioner." On his return for 1959, petitioner reported farm income of $107.61 and farm expenses of $5,638, as follows: Labor hired
$ 239.49
Seed and plants
64.22
Machine hired
1,310.00
Supplies purchased
28.05
Repairs and maintenance
229.80
Fertilizers
384.24
Gasoline
416.27
Veterinary
126.60
Taxes
359.73
Insurance
158.06
Interest
1,348.20
Water, electricity, and telephone
104.43
Automobile upkeep
250.00
Depreciation
618.91
Total
$5,638.00
*254 Respondent disallowed $2,063.23 of the farm expenses claimed by petitioner, consisting of $1,283.09 of the $1,310 claimed for machine hire, $131.14 of the $416.27 claimed for gasoline, $399 of the $502.12 claimed for depreciation of a Lark automobile, and the entire $250 claimed for automobile upkeep all because, so it is stipulated, of lack of verification by petitioner. In 1958 petitioner owned a 1957 DeSoto station wagon, driven and used by his wife, and a 1953 Studebaker pickup truck, used by him in the farm operation. On his return for 1958, he claimed a deduction for depreciation of the DeSoto in the amount of $643.42, representing 50 percent of the total reported depreciation of the car. In 1959 petitioner purchased two Studebaker Larks, one of which was used as a family car. The second, costing $2,008.50, was used by petitioner for travel to and from the airport in Miami and for errands and farm business. On his return for 1959, petitioner claimed deductions with respect to his farming operation for depreciation of the second Lark in the amount of $502.12. As an airline pilot, petitioner was required to travel extensively during 1958 and 1959. In these years he flew from *255 Miami to New York, Philadelphia, Boston, Buffalo, Houston, Havana, Tampa, and New Orleans. He flew both "turn-around" and "lay-over" flights; the former was a flight in which petitioner would leave and return to Miami without staying at a hotel. A lay-over flight was one involving a stopover that entailed staying at a hotel. National generally maintained hotel accommodations for its pilots in the cities to which petitioner flew in 1958 and 1959. These accommodations were double rooms, for pilot and copilot, the costs of which were charged to and paid by National. If petitioner was required to stay at a hotel where National did not maintain accommodations, he could usually charge the cost to National, but if he could not, he would pay the cost and put the amount on his expense account to be submitted to National. National usually reimbursed petitioner for the cost of his hotel rooms where it did not have a room available. Occasionally, however, petitioner would take a single room rather than the double room furnished by National because he felt that he could rest better without sleeping in the same room with a copilot, particularly if the other person snored. National reimbursed *256 petitioner for meals consumed away from Miami, for taxi fares, telephone expenses, and other expenses in 1958 and 1959 in the following amounts: 1958
Number
Amount
Breakfasts
113
$ 141.25
Lunches
188
282.00
Dinners
146
438.00
Taxi fares
403.40
Telephone
26.40
Other
10.00
Total
$1,301.05
1959
Breakfasts
101
$ 126.25
Lunches
191
284.50
Dinners
118
354.00
Taxi fares
741.00
Telephone
22.60
Other [1]
47.22
Total
$1,575.57
In 1958, petitioner flew 24 turn-around flights; in 1959 he flew 20. He flew 86 lay-over flights in 1958 and 87 in 1959. Reimbursement by National for meals in 1958 and 1959 was at the rate of $1.25 for breakfast; through February 1958, it was at the rate of $1.35 for lunch and $2.50 for dinner; after February 28, 1958, it was at the rate of $1.50 for lunch and $3 for dinner. On his returns for 1958 and 1959 petitioner claimed, as deductions from gross income, travel expenses as follows: 1958
1959
Days away from home - num-
ber [1]
138
152
Days away from home -
amount claimed
$1,882.50
$2,301.30
Less: Reimbursement
1,317.79
1,248.72
Unreimbursed travel ex-
pense reported
$564.71
$1,052.53
Less: Transport of bag-
gage
53.00
0
$511.71
$1,052.58
*257 The item "transport of baggage" represents the cost of transporting petitioner and his luggage from the airport terminal in Miami to his plane on the runway. The unreimbursed travel expenses for 1958 and 1959 were disallowed by respondent for lack of substantiation. Ultimate Facts Petitioners incurred expenses in operating their farm in 1958, in addition to the $3,940.09 (including depreciation) allowed by respondent, in the amount of $2,500. Petitioners did not incur expenses in operating their farm in 1959, in excess of the $3,574.68 allowed by respondent. Petitioners suffered a loss on the lime trees owned by them as a result of the freeze and cold weather in February 1958 in the amount of $600. Petitioners have failed to carry their burden of proving that they are entitled to deduct any amounts in either 1958 or 1959 in excess of the amounts allowed by respondent for travel expenses while away from home. Petitioners incurred medical expenses during the year 1959 for doctors' bills in the amount of $717.20 and for drugs in the amount of $148.10. Petitioners *258 incurred deductible telephone expenses in the amounts of $149.64 and $144.42 in the years 1958 and 1959, respectively; and deductible ALPA dues in the total amount of $381.44, or $90.04 more than the amount allowed by respondent, during the year 1959. Petitioners are not entitled to deduct any amounts in excess of the amounts allowed by respondent for uniforms during the years 1958 and 1959. [3]
At least a part of the deficiency for each of the years 1958 and 1959 was due to negligence or intentional disregard of rules and regulations. Opinion Each of the issues presented for our determination is basically factual, to be resolved on the basis of the evidence adduced, and petitioners have the burden of proving convincingly their contentions. In general, we must conclude that they have failed to sustain this burden. That conclusion follows from a review of the entire record which is fraught with confused guesses, inconsistent claims, and unsubstantiated estimates. Petitioners have presented us with practically no concrete evidence or proof as to when, where, why, and whether any of the disallowed expenses were actually *259 incurred or paid by petitioners, except for the very general and uncorroborated testimony of petitioner himself. With one or two exceptions no written records or documents were offered in evidence to support any of petitioner's testimony or any of the claimed deductions - yet most of the claimed expenses are of a type that would have to be recorded in order to be determined at the end of the year with any degree of accuracy. The first issue is concerned with deductions for expenses incurred by petitioner in the operation of his farm for 1958 and 1959. At the outset, we are confronted by the failure of the parties to explain at the trial the basis for respondent's determination for the year 1958. Petitioner reported, for the year 1958, farm expenses, exclusive of depreciation, in the amount of $9,903.69. Of the total farm expenses claimed as deductions, respondent determined that the amount of $7,578.17 was not allowable because of lack of verification by petitioner. Set forth in our findings are the categories of farm expenses claimed by petitioner in 1958, but the evidence does not show how much of each item was allowed or disallowed by respondent. It is only by reference to respondent's *260 brief that we have determined that respondent disallowed all of the farm expenses claimed except taxes, interest, and depreciation. Petitioner testified generally that he incurred certain expenses, in estimated amounts, in 1958, particularly for machine hire, seed, fertilizer, labor, insecticides, and irrigation; and testimony of a neighboring farmer was also adduced relating to the average cost of raising the crops which petitioner had under cultivation. But generally this testimony is of little value and amounted to little more than petitioner's own testimony that he incurred the expenses claimed on his return. His estimate of the cost of machine hire in 1958 is of little benefit in view of the fact that he stated he rented a tractor and disc and yet did not explain why he did not use the two tractors, a mower, and a cultivator with respect to which he claimed depreciation deductions in 1958. The only documentary evidence produced to support any of these expenses, except a group of gasoline credit card tickets, were two bills, one from Dawal Co. for $250 dated in 1958 marked paid in 1959 for drilling wells, and the other from Redland Construction Co., Inc., for $966 dated in 1958 *261 marked paid to the extent of $800 in 1959, which petitioner testified was for use of a bulldozer in clearing land. Petitioners offer no explanation of why such expenses should not be capitalized. [4]
On the record before us we do not believe that petitioners have carried their burden of proving that respondent's determinations, which are presumed to be correct, are wrong. Nevertheless, there does not seem to be any doubt that petitioners operated a vegetable farm and a lime grove for at least a part of the year 1958, and they must have incurred some expenses for labor, seeds, fertilizer, etc., in conducting such an operation. It is impossible to determine with any degree of accuracy from the evidence just what those expenses might have been. But using our best judgment from what evidence we do have, and bearing most heavily on petitioners who had the burden of proof, we have concluded as an ultimate fact that petitioners incurred deductible farm expenses *262 in 1958 in the amount of $2,500 in excess of the amounts allowed by respondent. Respondent allowed most of the farm expenses claimed by petitioners for 1959 except for machine hire and a part of the automobile expenses. Petitioners have failed to prove that respondent's determinations were erroneous and we have concluded as an ultimate fact that petitioners did not incur deductible farm expenses in 1959 in excess of the amounts allowed by respondent. The second issue relates to petitioners' claimed deduction for a casualty loss in 1958 when a grove of lime trees was partially destroyed by an unusually severe freeze. Petitioners claimed a loss of $2,000 on their return for the loss of 200 trees at $10 per tree. They now appear to claim a loss of over 400 trees at about $4.50 per tree. Despite this inconsistency, we believe petitioners did suffer a loss on their lime grove as a result of the freeze and are entitled to a deduction therefor. Bessie Knapp, 23 T.C. 716 (1955). The question is the amount of the loss, and this is difficult to determine from the record. The allowable loss is the difference between the value of the property before and after the casualty, limited *263 to petitioners' basis in the property. We have no evidence as to the value of the property as a whole, but since we have held in Bessie Knapp, supra, that land and trees, if business property, may be considered separately for purposes of computing a deductible loss, we will assume that the trees killed were worth at least what petitioner paid for them before the freeze and that they had no value after the freeze. We must therefore make an effort to determine petitioners' cost basis in the trees killed. In view of the inconsistencies in the record we have considerable doubt as to the number of trees killed by the freeze. Petitioner testified that he bought these trees in 1957 for $1.50 to $2 per tree. This price is supported by the testimony of petitioners' neighboring farmer, and we will accept it for purposes of this computation. We have no proof that petitioner did not expense the cost of these trees in 1957 except his own testimony and the fact that his prior years' returns were audited by respondent and there was apparently no disallowance of such an item. We have no competent evidence that petitioners did not expense the cost of planting, weeding, fertilizing, and *264 irrigating these trees. Based on the evidence presented, and bearing most heavily on petitioners who had the burden of proof, we have concluded that petitioners had a basis of $600 in the trees that were killed as a result of the freeze, and they are entitled to a deduction in 1958 in that amount for a casualty loss. The next issue is essentially one of substantiation. Petitioner contends that in 1958 and 1959 he incurred travel expenses, in excess of those for which he received reimbursement from his employer, in the respective amounts of $511.71 and $1,052.58, which he claimed as deductions in his returns. Petitioner, an airline pilot, was required to travel away from home extensively in 1958 and 1959. His travel expenses were undoubtedly considerable. But his employer, National, reimbursed him for these expenses at established rates for meals and actual expenses for lodging and taxi fares. Generally, National maintained hotel rooms for its crews in those cities to which petitioner was required to travel, and the cost of these rooms were charged directly to National without the necessity of petitioner's paying for them in the first instance. Even on those occasions when petitioner *265 was required to stay at a hotel where National did not maintain rooms, the cost could usually be charged to National and, it appears, National would pay for the cost of whatever accommodations the crewmen secured. Rarely would petitioner have to pay the cost of a hotel room and then submit its cost on his expense account, but this seems to have been the case in several instances in 1959. Set forth in our findings are the items and amounts of reimbursement received by petitioner in 1958 and 1959. It will be noted that petitioner received some $16 less reimbursement in 1958 then he reported and in 1959 he received some $327 more reimbursement than reported. Respondent does not seek to include in petitioner's income for 1959 the reimbursement actually received by him in excess of that reported by him. Furthermore, respondent has in effect allowed petitioner deductions for meals eaten by him on turn-around flights; that is, flights on which petitioner would leave and return to Miami in a single day. We have no knowledge as to how petitioner computed his unreimbursed expenses shown on his returns. He candidly admits that he does not now know. And we have no idea of how he has computed *266 the deductions which he claims in this proceeding. His contentions center on two arguments: (1) He paid more for meals than he was reimbursed for them; and (2) he sometimes got a single room in a hotel rather than share a double room with another crewman. National's rates for reimbursement for meals are set forth in our findings. There might be disagreement about whether they were liberal - the evidence indicates that petitioner's union sought higher rates - but petitioner's guesses as to what he spent for meals do not convince us that they were insufficient. As for petitioner's obtaining a single room when National furnished only a double, we have no idea when or how often these instances may have occurred in 1959 when petitioner was reimbursed for out-of-pocket hotel expenses. An employee of National testified and made it clear that National would reimburse a pilot for whatever hotel accommodations he obtained if National did not furnish them. Petitioner has failed to prove that he is entitled to any deductions for unreimbursed travel expenses in either 1958 or 1959. The final issue is whether any part of the deficiencies for 1958 and 1959 is due to negligence or to intentional *267 disregard of applicable rules and regulations. Sec. 6653(a). On this issue petitioners also have the burden of proof and have submitted little evidence. Our preceding observations should make it clear that petitioner's failure to maintain and retain records and his careless approximations have given rise to the deficiencies here involved. His reason for not retaining records for 1958 is not satisfactory and he has offered no excuse for 1959. We believe that he has not only failed to substantiate deductions but that he erred without cause in claiming them in the first instance. It appears that he was exceedingly liberal in his own favor in computing his deductions when he filed his returns. He has not merely failed to prove his deductions; the evidence indicates that he inflated them. We are aware that an attorney prepared petitioner's returns, but he has not endeavored to show to what extent, if any, he relied upon the attorney, and the deductions in controversy involved matters peculiarly within petitioner's own knowledge. Several facts point to petitioner's negligence. First, he presented no records or documentary evidence to support any of his claimed expenses. Secondly, the amount *268 he estimated for the lime tree loss on his 1958 return is concededly improper. Thirdly, his claim for unreimbursed travel expenses in both years has no discernible basis - at least insofar as we can determine from his testimony. Other facts are indicative of negligence; they appear from our discussion of other issues. On this issue, we hold for respondent. Decision will be entered under Rule 50. Footnotes
1. Statutory references hereafter are to the Internal Revenue Code of 1954. ↩
2. The deficiency notice disallows farm loss in the amount of $6,670.21, which is the above figure less the farm income of $907.96 reported by petitioner.↩
1. This category includes reimbursement for hotel rooms in 1959 in the amount of $38.64.↩
1. The number of days away from home does not appear on the 1959 return but was stipulated by the parties.↩
3. All stipulated orally during the course of the trial.↩
4. Sec. 182, I.R.C. 1954↩, added by sec. 21 of the Revenue Act of 1962, which allows a taxpayer to elect to deduct a limited amount of such expenditures, is applicable only to years beginning after 1962.