Richard C. and Shirley P. Purdy v. Commissioner.
Purdy v. Commissioner
Docket No. 4200-64.
United States Tax Court
T.C. Memo 1966-186; 1966 Tax Ct. Memo LEXIS 99; 25 T.C.M. (CCH) 961; T.C.M. (RIA) 66186; August 9, 1966
*99 Damage to the basement walls of petitioners' residence held not a "casualty" within the meaning of section 165(c)(3), I.R.C. 1954. Richard C. Purdy, pro se, 3500 Scottwood Rd., Columbus, Ohio. Richard M. Schwartz, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1962 in the amount of $261.40. The *100 only issue for decision is whether petitioners are entitled to a casualty loss deduction in 1962 under section 165(c)(3), I.R.C. 1954, [1] for expenses incurred by them in having the basement wall of their residence repaired. Findings of Fact Some of the facts were stipulated and are found accordingly. Petitioners are husband and wife residing in Columbus, Ohio. For the taxable year 1962 petitioners reported income on the cash basis and filed their joint Federal income tax return with the district director of internal revenue, Cincinnati, Ohio. Petitioners acquired their residence, which is located at 3500 Scottwood Road, Columbus, Ohio, in 1960. They were the third occupants of this residence, which had been built in 1957. At the time the house was constructed the draintile, which surrounds the house, was buried in clay soil, and this backfill surrounding the foundation was rather impervious to moisture. There was very little, if any, porous material placed around the draintile. There was no apparent damage to the basement of petitioners' residence during *101 the first 2 years that they lived there. Sometime in late December 1961, petitioner Richard C. Purdy (hereinafter referred to as petitioner) noticed hairline fractures in the mortar joint of the north wall of the cement block basement wall of his residence. A neighbor who lived next door to petitioner had a similar hairline crack in his wall and directed petitioner's attention to the problem. Two months later, in February 1962, petitioner noticed a slight swelling in one area of the north wall. He contacted his brother-in-law, an architectural engineer, who suggested that petitioner should keep accurate measurements in order to ascertain whether the wall was continuing to swell to the point where it would need repair. Eventually the bulging reached the point where part of the wall had expanded about 4 inches. Another engineer, Dwight Harvey, looked at the wall at petitioner's request. His investigation revealed that the earth immediately adjacent to the basement wall had settled about 6 to 8 inches, which caused storm waters to flow toward the house instead of away from it. He concluded that the storm water mixed with the backfill material created a fluid mass which caused a much *102 greater constant pressure on the basement wall than would dry backfill material, which pressure, in time, would cause the wall to fail. He recommended that to correct the situation the existing backfill adjacent to the basement wall be removed, that the wall be straightened, that the draintile be inspected to insure its proper operation, and then that the excavation be backfilled with proper granular material to insure proper runoff of the storm water and graded to assure a slope away from the house. Sometime in March 1962, petitioner contacted J. D. Stalter, who was engaged in construction work, and Stalter advised that the wall should be repaired. Petitioner hired Stalter to repair the wall, the project was begun in May 1962, and work was completed within 10 days at a cost of $1,307. The work performed by Stalter involved digging all around the back of the house, straightening the wall from the interior, cracking through every other cement block in the back wall and inserting steel reinforcement rods 4 feet in length, waterproofing the walls, and then replacing the backfilling with a porous material. Stalter found that the clay removed in the course of the repair work was solid *103 with moisture, and was heavily packed against the wall. Stalter was of the opinion that "this non-porous clay, which hampered the escape of water to the subterranean drain tile, while in a frozen condition exerted an abnormal pressure on the walls, causing them to crack and bulge." Petitioner believed that the cracking and bulging of the basement walls was the result of external pressure caused by the freezing of water and moisture which had soaked into the clay soil adjacent to the basement wall. The house was located on a level lot, and there was no apparent slippage involved. In the notice of deficiency issued to petitioners respondent determined that petitioners "did not sustain a casualty loss in the amount of $1,307.00 during the taxable year ended December 31, 1962, within the purview of section 165." Opinion The issue for decision is whether petitioners have established that they are entitled to a casualty loss deduction in the amount of $1,307, resulting from damage occurring to their basement walls. Respondent maintains that petitioners have not shown that the damage was due to a "casualty," but rather that the evidence indicates the damage was the result of a progressive *104 deterioration of the property through a steadily operating cause. Petitioners contend that the principal cause of the loss was the clay backfill next to the foundation wall. They argue that the clay became soaked with moisture, apparently froze, and consequently exerted strong pressure against the foundation, causing the exterior wall to bulge below the ground level. Section 165(a)[2] permits a deduction for losses not compensated for by insurance or otherwise. In the case of individuals, a loss of property which is not used in a trade or business or is not held for the production of income is deductible if it meets the conditions of section 165(c)(3). [3] That section provides generally that a deduction is allowed if the loss arises from fire, storm, shipwreck, or other casualty, or from theft. *105 The term "casualty," as used in the context here presented, typically refers to an identifiable event that is sudden, unexpected, or unusual, similar in nature to a fire, storm, shipwreck, or theft. Harry Heyn, 46 T.C. 302; Ray Durden, 3 T.C. 1; Matheson v. Commissioner, 54 F. 2d 537, affirming 18 B.T.A. 674. The term "excludes the progressive deterioration of property through a steadily operating cause." Fay v. Helvering, 120 F. 2d 253, affirming per curiam 42 B.T.A. 206; Clinton H. Mitchell, 42 T.C. 953, 971-2. If the damage is caused over a period of time in a manner that is analogous to normal deterioration by the elements, a casualty loss deduction is not allowed, Leslie C. Dodge, 25 T.C. 1022; nor is it allowed if the loss is due to the ordinary action of the elements upon a poorly constructed building, Matheson v. Commissioner, supra.Although it is true that a sudden adverse change in weather conditions such as an unusually heavy rain, see Austin Clapp, 36 T.C. 905, or a freeze, see Bessie Knapp, 23 T.C. 716, or even a rather prolonged *106 but unusual weather condition, such as a drought, see Buttram v. Jones, 87 F. Supp. 322, has been held to qualify as a casualty within the meaning of the Code provision, nevertheless the taxpayer must prove by competent evidence that the event or unusual condition occurred and that it was the proximate cause of the damage to be entitled to a casualty loss deduction. Matheson v. Commissioner, supra; James M. Kemper, 30 T.C. 546. A sudden and unexpected subsidence of the surface of land caused by a subterranean disturbance, see Harry Johnston Grant, 30 B.T.A. 1028, and a landslide resulting from unstable soil conditions, see Harry Heyn, supra, have also been held to give rise to casualty losses where there was an identifiable event which clearly caused the damage. Petitioners appear to recognize that if the damage resulting in the loss was caused by faulty construction and a gradual but continuing buildup of pressure against the basement wall due to improper drainage and the nonporous nature of the clay backfill it would not qualify as a casualty loss under section 165(c)(3). However they assert on brief that the "damage *107 may not have occurred suddenly, but there appears little question that the cause of the damage was sudden, namely, the freezing of the clay backfill." Unfortunately this position, if valid, is based on several assumptions which are not supported by evidence in the record. There is no evidence in the record that a severe rainstorm or that a sharp, sudden, unusual, or severe freeze occurred at any time prior to or during the time the wall was observed to be cracking and bulging. Nor is there any evidence that a sudden freeze caused the damage to the wall. The most that can be argued from the record is that one of the engineers was of the opinion that the "non-porous clay, which hampered the escape of water to the subterranean drain tile, while in a frozen condition exerted an abnormal pressure on the walls, causing them to crack and bulge." But even this gives no indication of the period over which this condition must have existed, or did exist, to cause the damage; in fact it implies that the damage probably resulted from repeated freezing conditions over a period of time. On the other hand the evidence shows that petitioner first noticed a crack in the wall in December 1961 and that *108 the bulging of the wall increased over a period of 4 or 5 months until it was repaired in May 1962. In addition, the other engineer consulted by petitioner expressed his opinion that the storm water, which was improperly drained, mixed with the clay creating a fluid mass which caused "constant" pressure on the wall which "presure [pressure], in time, [caused] the wall to fail." There is no evidence of any slippage of the soil back of the wall, nor of any sudden or unusual shifting of the subterranean soil. The lot was flat and apparently consisted of stable soil. The evidence as a whole indicates that the bulging condition in petitioners' basement walls developed over an extended period of time and was the result of heavy pressure exerted upon the walls because of improper drainage of storm water and the nonporous nature of the clay used as backfill against the walls. Such a condition, resulting from the use of improper soil as a backfill, reflects a progressive deterioration of property through a steadily operating cause, and the damage caused thereby has not been proximately related to a sudden or unusual identifiable event which is required to permit deduction for the loss *109 sustained thereby as a casualty loss under section 165(c)(3). Matheson v. Commissioner, supra; Rudolf Lewis Hoppe, 42 T.C. 820, affd. 354 F. 2d 988. We must therefore conclude that petitioners are not entitled to the deduction claimed for a casualty loss. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise noted.↩
2. SEC. 165(a)↩. General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. 3. SEC. 165(c). Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *↩